## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Ryan S. Burke, depose and state as follows:

## AGENT BACKGROUND

1.  I am a Special Agent of the Federal Bureau of Investigation ("FBI") and have been so employed since October 2012. I am currently assigned to the FBI's New Hampshire Safe Streets Gang Task Force ("SSGTF") where I am tasked with investigating gang members, violent criminals, and major offenders throughout the state. I primarily work alongside the Manchester Police Department ("MPD") as part of an initiative focused on reducing gun violence and other crime in the city of Manchester.

2.  Throughout my career, I have led and/or been involved with investigations of robberies, kidnappings, murders, fugitives, extortions, threats, drug distribution, illegal possession of firearms, and other crimes. My investigations have included the use of the following investigative techniques: physical surveillance; handling of cooperating sources and witnesses; exploitation of cellular, social media, and Internet Protocol ("IP") based communications data; execution of search and seizure warrants; wire, electronic, and oral wiretaps; and the execution of arrest warrants.

3.  Based on my training, experience, and information provided to me by other law enforcement officers, I am familiar with the modus operandi used by individuals engaged in the violation of various criminal offenses, such as those related to acts of violence, firearms, and controlled substances. For example, I have handled many cooperating sources and witnesses who have provided information to me specifically related to shootings, the distribution of controlled substances, and various firearms offenses. I have also reviewed thousands of court-authorized wiretap intercepts between drug traffickers, violators of firearm offenses, individuals conspiring

to commit armed robberies, and individuals engaged in the violation of other offenses. Many of these investigations have resulted in the execution of search warrants, arrest warrants, and eventual convictions.

## PURPOSE OF AFFIDAVIT

4. I submit this affidavit in support of an application for a warrant to search the following vehicle (hereafter, the "**Target Vehicle**"):

   a. Silver 2015 Cadillac XTS bearing VIN 2G61W5S87F9146433 with New Hampshire license plate 4900881;

5. Based on the information contained herein, there is probable cause to believe that the **Target Vehicle**, described in Attachment A, contains evidence, fruits, and instrumentalities of the crime of 21 U.S.C. § 841 [Possession with the Intent to Distribute Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] and 18 U.S.C. § 521 [Criminal Street Gangs], described in Attachment B.

6. The information set forth in this affidavit is based on my personal participation in this investigation, as well as my training and experience, and information received from other law enforcement officers. I have not set forth every detail I or other law enforcement officers know about this investigation but have set forth facts that I believe are sufficient to evaluate probable cause as it relates to the issuance of the requested warrant.

## PROBABLE CAUSE

7. On September 1, 2021 at approximately 10:30 a.m., ground and aerial law enforcement units established surveillance at 231 Thornton Street in Manchester, NH in an effort to seize a vehicle pursuant to a federal warrant authorized on August 25, 2021 in the possession of Michael Francis (YOB: 1987) – a member of the Gangster Disciples criminal street gang. Additionally, law enforcement conducted surveillance at 153 Joliette Street in Manchester, NH in

search of the **Target Vehicle**, which was believed to belong to an associate of Francis. At approximately 1:30 p.m., Emilio Flores (YOB: 1991) – a known associate of Francis and documented gang member – was observed driving away from 153 Joliette Street in the **Target Vehicle**.

8. At approximately 1:35 p.m., the **Target Vehicle** driven by Flores arrived at 231 Thornton Street. Flores exited the **Target Vehicle** and subsequently entered 231 Thornton Street through the front door. Minutes later, Francis emerged for the first time that day onto the third-floor balcony of the residence at 231 Thornton Street while talking on his cellphone. At approximately 2:06 p.m., Francis departed from the residence in his vehicle and it was followed by law enforcement. Approximately fifteen minutes later, Flores was observed departing 231 Thornton Street in the **Target Vehicle** (he was not followed).

9. At approximately 2:40 p.m., Francis arrived at the rear parking lot of 153 Joliette Street. The unoccupied **Target Vehicle** was observed in front of the residence there. By way of aerial surveillance, Flores was then observed exiting 153 Joliette Street through its rear door. Flores met with Francis in the rear parking lot and then re-entered the rear door of the residence. Flores then emerged again, put a bag in the back seat of Francis' vehicle, and entered the front passenger seat of Francis' vehicle. Flores then quickly exited the vehicle, went back in the rear door leading to 153 Joliette Street, and then came back to the passenger seat of Francis' vehicle. Francis and Flores then departed from the rear parking lot together in Francis' vehicle at approximately 2:49 p.m.

10. At approximately 2:58 p.m., Francis and Flores arrived at TD Bank located at 293 South Main Street in Manchester, NH. Francis proceeded to enter the bank while Flores remained in Francis' vehicle. Minutes later, law enforcement effected the arrest of Francis and Flores – both

for parole violations. Francis' vehicle was seized and searched later that day pursuant to the federal warrant authorized by the Honorable United States Magistrate Judge Daniel J. Lynch (District of New Hampshire) on August 25, 2021. The following items were seized from Francis' vehicle: a 1,017.2 gram stamped-brick of a substance which field-tested positive for cocaine located in the bag Flores was observed putting inside the vehicle, approximately $10,000 in US Currency, an empty firearms holster under the driver's seat where Francis sat, cellular phones, and black bandanas customarily worn by Gangster Disciples.

11. Later that evening, still on September 1, 2021, the Honorable United States Magistrate Judge Daniel J. Lynch (District of New Hampshire) authorized a warrant to search Unit 1 of 153 Joliette Street. The search was conducted shortly thereafter. The search of Flores' apartment resulted in the seizure of an additional approximately 2,075 grams of a substance which field-tested positive for cocaine.

12. Due to the seizure of a significant amount of suspected-cocaine from Flores, law enforcement conducted an exterior canine narcotics sweep of the **Target Vehicle**, which Flores had been driving, while it was still parked outside of 153 Joliette Street. The canine was given the command to search for illegal drugs and alerted to the odor of controlled substances from within the **Target Vehicle** by displaying behavior changes (deep nasal exchange, head snap). As a result of the canine sweep, the **Target Vehicle** was impounded by law enforcement on September 1, 2021. It remains in a secure lot at the Manchester Police Department, 405 Valley Street, Manchester, NH pending this application for a warrant to search it.

### COMPUTERS, ELECTRONIC STORAGE, AND FORENSIC ANALYSIS

13. As described in Attachment B, this application seeks permission to search for records that might be found in the **Target Vehicle**, in whatever form they are found. One form in

4

which the records might be found is data stored on a computer's hard drive or other storage media. Thus, the warrant applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

14. Based on my training and experience, I use the following technical terms to convey the following meanings:

    a. IP Address: The Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address looks like a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

    b. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

    c. Storage medium: A storage medium is any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

15. *Probable cause.* I submit that if a computer or storage medium is found in the **Target Vehicle**, there is probable cause to believe those records will be stored on that computer or storage medium, for at least the following reasons:

   a. Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet. Electronic files downloaded to a storage medium can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

   b. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

   c. Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is

typically required for that task. However, it is technically possible to delete this information.

d. Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

16. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only computer files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how computers were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence will be on any storage medium in the **Target Vehicle** because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created, although this information can later be falsified.

b. As explained herein, information stored within a computer and other electronic storage media may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within a computer or storage media (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, Internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the computer or storage media. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the computer was remotely accessed, thus inculpating or exculpating the computer owner. Further, computer and storage media activity can indicate how and when the computer or storage media was accessed or used. For example, as described herein, computers typically contain information that log: computer user account session times and durations, computer activity associated with user accounts, electronic storage media that connected with the computer, and the IP addresses through which the computer accessed networks and the Internet. Such information allows investigators to understand the chronological context of computer or electronic storage media access, use, and events relating to the crime under investigation. Additionally, some information stored within a computer or electronic storage media may provide crucial

evidence relating to the physical location of other evidence and the suspect. For example, images stored on a computer may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The existence of such image files, along with external device connection logs, may also indicate the presence of additional electronic storage media (e.g., a digital camera or cellular phone with an incorporated camera). The geographic and timeline information described herein may either inculpate or exculpate the computer user. Last, information stored within a computer may provide relevant insight into the computer user's state of mind as it relates to the offense under investigation. For example, information within the computer may indicate the owner's motive and intent to commit a crime (e.g., Internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c. A person with appropriate familiarity with how a computer works can, after examining this forensic evidence in its proper context, draw conclusions about how computers were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, computer evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether

9

>
> data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.
>
> e. Further, in finding evidence of how a computer was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

17. *Necessity of seizing or copying entire computers or storage media.* In most cases, a thorough search of a premises for information that might be stored on storage media often requires the seizure of the physical storage media and later off-site review consistent with the warrant. In lieu of removing storage media from the premises, it is sometimes possible to make an image copy of storage media. Generally speaking, imaging is the taking of a complete electronic picture of the computer's data, including all hidden sectors and deleted files. Either seizure or imaging is often necessary to ensure the accuracy and completeness of data recorded on the storage media, and to prevent the loss of the data either from accidental or intentional destruction. This is true because of the following:

> a. The time required for an examination. As noted above, not all evidence takes the form of documents and files that can be easily viewed on site. Analyzing evidence of how a computer has been used, what it has been used for, and who has used it requires considerable time, and taking that much time on premises could be unreasonable. As explained above, because the warrant calls for forensic

       electronic evidence, it is exceedingly likely that it will be necessary to thoroughly examine storage media to obtain evidence. Storage media can store a large volume of information. Reviewing that information for things described in the warrant can take weeks or months, depending on the volume of data stored, and would be impractical and invasive to attempt on-site.

   b. Technical requirements. Computers can be configured in several different ways, featuring a variety of different operating systems, application software, and configurations. Therefore, searching them sometimes requires tools or knowledge that might not be present on the search site. The vast array of computer hardware and software available makes it difficult to know before a search what tools or knowledge will be required to analyze the system and its data on the Premises. However, taking the storage media off-site and reviewing it in a controlled environment will allow its examination with the proper tools and knowledge.

   c. Variety of forms of electronic media. Records sought under this warrant could be stored in a variety of storage media formats that may require off-site reviewing with specialized forensic tools.

18. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit seizing, imaging, or otherwise copying storage media that reasonably appear to contain some or all of the evidence described in the warrant, and would authorize a later review of the media or information consistent with the warrant. The later review may require techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of a hard drive to human inspection in order to determine whether it is evidence described by the warrant.

19. Because it is possible that several people share the **Target Vehicle**, it is possible that the **Target Vehicle** will contain storage media that are predominantly used, and perhaps owned, by persons who are not suspected of a crime. If it is nonetheless determined that it is possible that the things described in this warrant could be found on any of those computers or storage media, the warrant applied for would permit the seizure and review of those items as well.

## CONCLUSION

20. I submit that this affidavit supports probable cause for a warrant to search the **Target Vehicle** described in Attachment A and seize the items described in Attachment B. The seizure of these items will aid law enforcement in their investigation of various violations of 21 U.S.C. § 841 [Possession with the Intent to Distribute Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] and 18 U.S.C. § 521 [Criminal Street Gangs].

## REQUEST FOR SEALING

21. I request that the Court order that all papers in support of these applications, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public and/or known to all parties relevant to the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

/s/ Ryan S. Burke
Ryan S. Burke, Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

Date: **Sep 28, 2021**
Time: **10:37 AM, Sep 28, 2021**

_____
HONORABLE ANDREA K. JOHNSTONE
UNITED STATES MAGISTRATE JUDGE

# ATTACHMENT A

*Property to be Searched*

The property to be searched is the entire passenger compartment and trunk or storage space, and any closed or locked containers found therein, including mobile electronic devices, of the

> Silver 2015 Cadillac XTS bearing VIN 2G61W5S87F9146433 with New Hampshire license plate 4900881,

which is currently in the possession of the Manchester Police Department at 405 Valley Street, Manchester, NH.

## ATTACHMENT B

*Description of Information or Items to Be Seized*

I.      All records, in whatever form, and tangible objects that constitute evidence, fruits, or instrumentalities of 21 U.S.C. § 841 [Possession with the Intent to Distribute Controlled Substances], 21 U.S.C. § 846 [Conspiracy to Distribute Controlled Substances] and 18 U.S.C. § 521 [Criminal Street Gangs], including information and items related to:

   a. Controlled substances and materials consistent with controlled substances packaging;

   b. Criminal street gang affiliation and criminal street gang activity, such as acts of violence and other criminal activity in furtherance of the criminal street gang or conducted by its members;

   c. United States currency, foreign currencies, and other forms of currency acquired or used during transactions involving contraband;

   d. Places and locations where evidence of the above-referenced criminal offenses was obtained or discarded, or is currently stored;

   e. The identities of any co-conspirators, as well as any co-conspirators' acts taken in furtherance of the offenses enumerated in this application;

   f. Electronic devices, including mobile electronic equipment, serial numbers or any electronic identifiers that serve to identify the equipment, and the information stored electronically on the devices, specifically:

   i. telephone logs, contact lists, other records reflecting names, aliases, addresses, telephone numbers, and other contact or identification data;

   ii. the actual and attempted possession, purchase, receipt, sale, pawn, trade, transfer, transportation, shipment, or other disposition of controlled substances, including buyer lists, seller lists, notes, pay-owe sheets, records of sales, logs, receipts, and communications;

   iii. criminal street gang affiliation and criminal street gang activity, such as acts of violence and other criminal activity in furtherance of the criminal street gang or conducted by its members;

   iv. messages and other communications related to controlled substances and criminal street gang affiliation and activity;

   v. photographs, images, and depictions of or related to controlled substances violations and criminal street gang affiliation and activity, and currency;

    vi.    who used, owned or controlled the equipment;

    vii.    when the equipment was used;

    viii.    the travel and whereabouts of the user of the equipment;

    ix.    the attachment of other hardware or storage media;

    x.    the use of counter-forensic programs and associated data that are designed to eliminate data;

    xi.    passwords, encryption keys, and other access devices that may be necessary to use the equipment;

    xii.    accounts associated with software services or services providing Internet access or remote storage of either data or storage media; and

    xiii.    serial numbers and any electronic identifiers that serve to identify the equipment.

II.    For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a. Items described in Paragraph I (a) through (f);

    b. evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

    c. evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

    d. evidence of the lack of such malicious software;

    e. evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

    f. evidence indicating the computer user's state of mind as it relates to the crimes under investigation;

g. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

h. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

i. evidence of the times the COMPUTER was used;

j. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

k. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

l. records of or information about Internet Protocol addresses used by the COMPUTER;

m. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

n. contextual information necessary to understand the evidence described in this attachment.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" (or "COMPUTER") includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.